[No. A044707. First Dist., Div. One. Feb. 2, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES THOMAS, Defendant and Appellant.

**COUNSEL**

William A. Resneck, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Morris Lenk and Susan J. King, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEIN, J.**—James Thomas, a prisoner at the California Medical Facility, appeals from the order of the superior court that he be administered psychotropic drugs involuntarily.

Thomas had been administered drugs pursuant to a court order which expired on October 15. He immediately refused to continue his medication, and within one month stopped eating and drinking, refused to wear clothing, stopped walking, and stopped communicating with anyone. The People, following the procedures outlined in *Keyhea v. Rushen* (1986) 178 Cal.App.3d 526 [223 Cal. Rptr. 746], and in an injunction thereafter issued by the superior court (order granting plaintiffs' motion for clarification and modification of injunction and permanent injunction, filed Oct. 31, 1986, in Keyhea v. Rushen, Solano County, No. 67432, hereafter, the Injunction), caused him to be involuntarily medicated on a short-term basis and petitioned the court for the order from which Thomas now appeals. At the hearing on the People's petition, the state called as an expert witness a psychiatrist familiar with Thomas's medical records. The witness stated his opinion that Thomas suffered from schizophrenia, catatonic type, chronic, with an acute exacerbation and his further opinion that, because of his

illness, Thomas would not eat, drink, walk, communicate, or wear clothing unless medicated.

Thomas does not contest the proceedings leading up to the order at issue. His appellate contentions are that there was insufficient evidence for the court to find him gravely disabled and incompetent, that the court had no power to order treatment for one year from the date of the order, and that the court was required to consider less restrictive alternatives before ordering his treatment with psychotropic medication. We shall consider the contentions in that order.

I.

*Appellant Was Not "Gravely Disabled" at the Time He Was Involuntarily Forced to Take Psychotropic Medication*

It was determined in *Keyhea* v. *Rushen, supra,* 178 Cal.App.3d at page 542, that state prisoners presently have a statutory right to refuse long-term treatment with psychotropic drugs absent a judicial determination that they are incompetent to do so. The decision, and the following Injunction, set forth the procedures which are designed to protect that statutory right. As relevant, absent a judicial determination, involuntary psychotropic medication may be administered on a short-term basis not to exceed 24 days. Thereafter, unless there is an emergency, involuntary medication cannot continue absent a court order. By court order the period of involuntary medication can extend for an additional period of one year.[1] In order to obtain a court order, the People must file a petition containing specified allegations and must satisfy the court that as a result of a mental disorder the prisoner presents a danger to others, a danger to self, or is gravely disabled and, further, that the prisoner is incompetent to refuse medication.

"Gravely disabled" is defined as the inability because of a mental disorder "to use the elements of life which are essential to health and safety including food, clothing, and shelter, even though provided" by others. (Injunction, p. 4.)

Here, where there was evidence that Thomas became catatonic absent medication and consequently did not eat, drink, or clothe himself, and where the People's expert stated his opinion that Thomas's behavior resulted from schizophrenia, catatonic type, there was substantial evidence that Thomas was gravely disabled as a result of a mental disorder.

---

[1] One of Thomas's contentions is that the one-year period must include any period of medication occurring prior to the court order. For the reasons stated later in this opinion, we reject this contention.

It is immaterial that there may have been contrary evidence, or that other inferences could have been drawn from the evidence placed before the court. An appellate court, ruling on the validity of the trial court's order, looks only at the evidence supporting the successful party and disregards the contrary showing. (*Conservatorship of Isaac O.* (1987) 190 Cal.App.3d 50, 57 [235 Cal. Rptr. 133].) It is thus immaterial that there was evidence from which it might be inferred that during the time period at issue Thomas was at most a "management problem," or that he refused to talk "because he didn't want to," or that at times he refused to eat since he didn't feel like eating. Nor does it matter that Thomas somewhat impeached the claim that he did not drink during the period at issue. The question before this court is whether the trial court's finding of mental disorder resulting in grave disability was supported by substantial evidence. It was.

## II.

### *Appellant Was Not Incompetent at the Time He Was Involuntarily Forced to Take Psychotropic Medication*

■ Thomas argues that the evidence does not support the finding that he was incompetent to refuse medication. He argues that at the most his refusal to take his medication was a "wrong decision." The evidence was, however, that Thomas's catatonia prevented him from communicating at all; it follows that he was incompetent to agree to, or refuse, medication. Further, the evidence that he did not eat, drink, remain clothed, or walk, supports a clear inference that his actions were not simply "wrong decisions," but the result of an inability or refusal to make choices in his own best interest. Substantial evidence supports the finding that Thomas was incompetent to refuse medication.

## III.

### *The Court Exceeded Its Jurisdiction by Ordering Involuntary Medication for a Period Greater Than One Year*

As discussed, *supra*, the Injunction contemplates two periods of involuntary medication. Part II of the Injunction concerns the first period and provides that involuntary medication can be administered absent a court hearing for a period not to exceed 24 days. Part II, as relevant, provides that "After the involuntary medication has begun, the total period of involuntary medication, including intervening periods of voluntary treatment, shall not exceed the total maximum period during which the prisoner could have been involuntarily medicated, if the prisoner had been medicated continu-

ously on an involuntary basis, from the time of initial involuntary medication." (Injunction, p. 15.)

Part III of the Injunction requires a court hearing if involuntary medication is sought for more than 24 days. Part III further specifies, "Defendants are further enjoined from administering involuntary medication to prisoners for whom a court order has been obtained as described in § III F (authorizing involuntary medication on the ground the prisoner is gravely disabled and is incompetent to refuse medication) for a period in excess of one year from the date of the order. . . ." (Injunction, (1.) p. 21.)

Thomas, relying on the limitations' period stated in part II, contends that the longest permissible period for his involuntary medication extended one year from November 16, 1988, when he was first medicated. Part II, however, as noted, refers only to the period *preceding* the court hearing. Under part III, medication may be ordered for an *additional* one year period, beginning on the date the order is issued.

IV.

*The Court Erred in Ordering Involuntary Medication Without Considering Less Restrictive Measures*

■ Nothing in *Keyhea* v. *Rushen, supra,* 178 Cal.App.3d 526, expressly requires the court to consider less restrictive alternatives before permitting involuntary psychotropic medication. The Injunction also contains no such requirement, providing only that the petition seeking long-term medication must include a statement of the available alternatives, if any, to the course of treatment recommended. (Injunction, pp. 16-17.) Here, the petition stated that there were no available alternatives to the course of treatment recommended.

Thomas, however, argues that he was entitled to an evidentiary hearing on the question of whether the administration of psychotropic medication was in fact the least restrictive or least drastic course of treatment available to him.

In *Riese* v. *St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303 (review granted Mar. 3, 1988, S004002; review dismissed June 22, 1989, as improvidently granted and Reporter of Decisions directed to publish Court of Appeal opinion),[2] it was found that a court has a duty to

---

[2] At issue in *Riese* were the procedural requirements of the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et. seq.) which procedural requirements, insofar as is relevant in

determine if a patient lacks capacity to consent to antipsychotic medication; however, the court further found that the trial court "is *not* to decide such medical questions as whether the proposed therapy is definitely needed or is the least drastic alternative available, but may consider such issues only as pertinent to assessment of the patient's ability to consent to the treatment." (*Id.* at p. 1322.)[3]

Here, the petition alleged that there were *no* reasonable treatment alternatives to involuntary administration of psychotropic medication and, indeed, the evidence indicates that the allegation was correct. This is not a situation in which the prisoner's major danger to himself is his refusal to take nonpsychotropic medication—i.e, where it reasonably might be determined that involuntary administration of the required nonpsychotropic medication would be less drastic than the administration of the psychotropic medication. It appears that Thomas is entirely unable to take care of himself, absent psychotropic medication, such that there is no real alternative to involuntary medication.

The order is affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.

---

the instant case, extend also to prisoners. (*Keyhea* v. *Rushen, supra,* 178 Cal.App.3d at p. 532.)

[3]Under the federal standard the role of the court is only to ensure that professional judgment has been exercised in the decision to medicate a patient; i.e., the court defers to the medical professionals on the issues of incapacity and choice of treatment. "Underlying this approach is the view that professionals are in a better position than courts to make treatment decisions and, therefore, that courts should defer to professional judgment rather than specifying which of several professionally acceptable choices should be made. (*Youngblood* v. *Romeo* [3d. Cir. 1982] 457 U.S. 319, 321-323 [73 L.Ed.2d 28, 39, 40-42].)" (*Riese* v. *St. Mary's Hospital & Medical Center, supra,* 209 Cal.App.3d at pp. 1320-1321.)