Filed 5/14/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| D.K.,<br><br>  Plaintiff and Appellant,<br>v.<br><br>Office of Administrative Hearings,<br><br>  Defendant and Respondent;<br><br>State Department of State Hospitals,<br><br>  Real Party in Interest. | A167272<br><br>(Napa County Super. Ct.<br> No. 23-CV-000110) |

Petitioner D.K. appeals from a short-term order authorizing that she be involuntarily medicated under Penal Code[1] section 1370. We conclude D.K.'s appeal is moot because the order has expired and no meaningful relief can be effectuated through review of that order. However, we exercise our discretion to address D.K.'s appeal of the superior court's finding that the statutory scheme of section 1370 precluded her from filing a writ of administrative mandamus to challenge that medication order. We conclude both the significant liberty interests at issue and the language of section 1370 support D.K.'s right to seek writ review.[2]

---

[1] All further undesignated statutory references are to the Penal Code.

[2] We grant respondent's unopposed request that this court take judicial notice of a February 7, 2023 involuntary medication order entered in *People*

D.K. was found incompetent to stand trial (IST) and committed to the Department of State Hospitals (DSH) by the Orange County Superior Court. D.K. is a patient at Napa State Hospital (NSH) and has been diagnosed with "[u]nspecified schizophrenia spectrum and other psychotic disorder."

After D.K.'s transfer to NSH, DSH filed a petition with the Office of Administrative Hearings (OAH) for an interim order to compel involuntary medication of D.K. with antipsychotic medication. DSH asserted D.K. lacked the capacity to make decisions regarding antipsychotic medication, her mental disorder required such treatment, and "it is probable that serious harm to [her] physical or mental health" would result absent such treatment. Alternatively, DSH argued D.K. posed a danger of inflicting substantial physical harm on others because of her mental disorder.

Pursuant to section 1370, subdivision (a)(2)(D)(i), an administrative law judge (ALJ) conducted an evidentiary hearing on January 20, 2023. The ALJ found by clear and convincing evidence that D.K. "lacks capacity to make decisions regarding antipsychotic medication, [her] mental disorder requires treatment with antipsychotic medication[,] and without treatment with antipsychotic medication it is probable that serious harm to [her] physical or mental health will result." The ALJ ordered D.K. involuntarily medicated from January 17, 2023 to February 7, 2023.

On January 27, 2023, D.K. filed a petition for a writ of administrative mandate with the Napa County Superior Court, asking the court to order OAH to vacate its medication order because insufficient evidence supported the finding of probable harm. D.K. further asserted the medication order

v. *D.K.*, Orange County Superior Court, case No. 22HF0015 F A. (Evid. Code, §§ 452, subd. (d), 459.)

violated her federal and state due process rights. D.K. requested an expedited hearing on the basis that if the petition were not heard prior to February 7, 2023—when the medication order expired—she would be denied any effective relief.

The superior court denied her petition. The court concluded D.K. was not entitled to writ review because section 1370 provided for a "plain, adequate, [] speedy remedy" which, in this instance, was an upcoming February 7, 2023 involuntary medication hearing before the Orange County Superior Court. The court reached this conclusion despite acknowledging that the upcoming hearing "is not a true review of the underlying temporary [involuntary medication] order."

Despite finding D.K. not entitled to writ review, the court proceeded to address her petition on the merits. The court found "more than substantial evidence in the record to meet" the first two elements—i.e., "whether [D.K.] lacked capacity to make decisions regarding antipsychotic medication and that her mental disorder required medical treatment with antipsychotic medication." As to the third element, the court acknowledged "there wasn't any evidence in the [treating psychiatrist's] report that [D.K.'s] condition was substantially deteriorating," but concluded that the psychiatrist's hearing testimony provided substantial evidence to meet this element. The court noted the psychiatrist's testimony that D.K. was currently suffering adverse effects to her physical or mental health, including heightened resistance to treatment, poor hygiene that placed her at risk for physical illness and infections, a pattern of being easily agitated and angry that placed her at risk for victimization, and—most importantly—a history of refusing treatment for her other medical conditions, including diabetes and hypertension, when her mental disorder was not treated. Based on those factors, the court concluded

that "if her mental disorder was not treated by the antipsychotic medications sought it is probable that serious harm to her physical or mental health would result." D.K. appealed.

On February 7, 2023, the Orange County Superior Court conducted a hearing on DSH's petition for a one-year order authorizing the involuntary administration of antipsychotic medication. D.K. submitted on the request. The court subsequently found D.K. "lack[ed] the capacity to make decisions regarding antipsychotic medication and if [her] mental disorder is not treated, serious harm to [her] physical or mental health is the probable result." The court thus granted the petition.

## DISCUSSION

### I. Mootness

The Attorney General contends the appeal is moot because the interim involuntary medication order is no longer in effect, and D.K. did not appeal from the subsequent involuntary medication order entered by the Orange County Superior Court. D.K. contends the appeal is not moot because the brevity of the involuntary antipsychotic medication order does not allow for appellate review and "[m]eaningful review as to this proceeding is a substantial state-created right."

Our role as an appellate court is to decide actual controversies, and not to opine ' " ' "upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it.' " ' " [Citation.] '[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief.' " (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380.) Thus, " ' "[a]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A

4

reversal in such a case would be without practical effect, and the appeal will therefore be dismissed." ' " (*People v. Delong* (2002) 101 Cal.App.4th 482, 486.)  However, even in the event of a moot controversy, courts may exercise their discretion to decide issues raised on appeal if they involve important issues of public interest that are capable of repetition yet evade review.  (See, e.g., *People v. Cheek* (2001) 25 Cal.4th 894, 897–898; *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1.)

D.K. raises two main arguments on appeal.  First, she contends substantial evidence did not support the temporary involuntary medication order.  This argument is grounded in case-specific evidence not likely to recur in the same manner at future proceedings, specifically the treating psychiatrist's testimony of D.K.'s then-current mental state.  And future proceedings would presumably be based on updated medical reports and testimony.  We therefore do not exercise our discretion to decide this issue as it is unlikely to recur in the same manner at future proceedings and does not qualify as an important issue of public interest that is capable of repetition.  (See *People v. McCray* (2023) 98 Cal.App.5th 260, 268 [declining to address moot questions that are fact-specific].)

D.K.'s second argument is that she was entitled to file a writ petition contesting the ALJ's temporary involuntary medication order, an important issue of public interest given the " 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.' " (*Sell v. United States* (2003) 539 U.S. 166, 178.)  And it is an issue both capable of repetition and likely to evade appellate review due to the short, 21-day time frame of these temporary involuntary medication orders. Accordingly, we address the merits of D.K.'s argument that she is entitled to

writ review of the temporary involuntary medication order under section 1370.

## II. D.K. Was Entitled to Writ Review of the Temporary Involuntary Medication Order

D.K. argues she is entitled to writ review of the temporary involuntary medication order because section 1370 does not otherwise supply a plain, speedy, and adequate remedy to contest such an order. (See *County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 672 "A writ of mandamus . . . only issues when there otherwise is no speedy and adequate remedy at law."].) The Attorney General highlights that section 1370 provides for a superior court hearing—which must be conducted within 18 days from the initial date of involuntary medication—and contends this hearing provides an adequate remedy at law. Alternatively, the Attorney General argues D.K. could have sought a temporary restraining order or a preliminary injunction.

We conclude D.K. was entitled to seek interim judicial review.

### A. Statutory Scheme

"A court may not try a criminal defendant who is mentally incompetent. [Citation.] . . . If a defendant is found IST by the court, . . . section 1370 provides that criminal proceedings 'shall be suspended until the person becomes mentally competent.' [Citation.] In order to 'promote the defendant's speedy restoration to mental competence,' the court shall commit the defendant to a DSH facility for treatment." (*People v. Edwards* (2023) 88 Cal.App.5th 1259, 1263.)

If an involuntary antipsychotic medication order is not already in place and the defendant lacks capacity to consent, the treating psychiatrist may provide a certification assessing the defendant's current mental status "and

the opinion of the treating psychiatrist that involuntary antipsychotic medication has become medically necessary and appropriate." (§ 1370, subd. (a)(2)(C).) The defendant may then be involuntarily administered antipsychotic medication for up to 21 days following such a certification. (§ 1370, subd. (a)(2)(D)(i).) However, within 72 hours of the certification, the defendant is entitled to a medication review hearing before an ALJ. (§ 1370, subd. (a)(2)(D).) The defendant is entitled to appointment of an attorney or patient's right advocate to assist in preparing for the hearing, represent the defendant at the hearing, review the panel's final determination following the hearing, and advise the defendant of the right to judicial review of the panel's decision. (§ 1370, subd. (a)(2)(D)(i).)

If an ALJ determines the defendant meets the criteria for the involuntary administration of antipsychotic medication, such medication may continue for the entire 21-day certification period. (§ 1370, subd. (a)(2)(D)(ii).) The treating psychiatrist must also file a copy of the certification and a petition with the appropriate superior court "for issuance of an order to administer antipsychotic medication beyond the 21-day certification period." (§ 1370, subd. (a)(2)(D)(ii).)

The superior court must then "hold a hearing, no later than 18 days from the date of certification, to determine whether antipsychotic medication should be ordered beyond the [21-day] certification period." (§ 1370, subd. (a)(2)(D)(iv).) However, the court may continue the hearing and extend the certification period for up to 14 additional days upon stipulation or a finding of good cause. (§ 1370, subd. (a)(2)(D)(vii).) Following the hearing, the superior court may, upon making the necessary findings, authorize involuntary medication of the defendant for up to one year. (§ 1370, subds. (a)(2)(D)(viii), (a)(7)(A).) The district attorney, county counsel, or

7

representative of the facility holding the defendant can petition the court for a renewal of the medication order prior to the expiration of this one-year period. (§ 1370, subd. (a)(7)(B).)

## B. Section 1370 Provides for Judicial Review of a Temporary Involuntary Medication Order

We review issues of statutory interpretation de novo. (*Cal. Advocates for Nursing Home Reform v. Arágon* (2021) 60 Cal.App.5th 500, 507.)[3]

" 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We first examine the statutory language, giving it a plain and commonsense meaning.' [Citation.] 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Cal. Advocates for Nursing Home Reform*, at p. 507.)

We therefore begin with the plain language of section 1370. Contrary to the Attorney General's argument that section 1370 provides "a clear judicial review procedure" via a hearing with the superior court "no later than 18 days from the date of certification," nothing in section 1370 specifies a review process in the event an ALJ authorizes a 21-day medication order.

---

[3] The parties question the appropriate standard of review. Here, the issue is whether the statutory scheme provides an adequate alternative remedy apart from writ review. Because "[t]he legal foundation for the alternative remedy does not vary with the circumstances of a particular case," this appeal raises an issue of law subject to independent review on appeal. (See *Villery v. Dept. of Corrections & Rehabilitation* (2016) 246 Cal.App.4th 407, 415.)

The subdivision relied upon by the Attorney General—namely subdivision (a)(2)(D)(ii)—is not designed to review the adequacy of the ALJ's order. Rather, that provision requires the treating psychiatrist to file a separate petition for the purpose of obtaining "an order to administer antipsychotic medication beyond the 21-day certification period." Subdivision (a)(2)(D)(iv) likewise explains the purpose of the subsequent superior court hearing: "to determine whether antipsychotic medication should be ordered beyond the certification period." This statutory language expressly states that the superior court is *not* reviewing the adequacy of the temporary medication order, but rather conducting a separate proceeding to assess whether an additional one-year involuntary medication order is appropriate. Accordingly, the plain language of the statute indicates the Legislature did not intend the superior court hearing to constitute the review mechanism for any temporary involuntary medication orders.

Moreover, subdivision (a)(2)(D)(i) expressly indicates the Legislature intended to allow for judicial review. That provision mandates appointment of an attorney or patients' right advocate and sets forth their general duties. In listing those duties, the statute states the attorney or patient advocate must "advise the defendant of their right to judicial review of the panel's decision, and provide the defendant with referral information for legal advice on the subject." (§ 1370, subd. (a)(2)(D)(i).) Unless the Legislature intended judicial review to be available, it would make no sense for it to require the appointed attorney and/or patient advocate to advise the defendant of their right to judicial review.

This scheme largely tracks analogous statutes, sections 2602 and 2603, that address involuntary medication orders for state prison and county jail inmates. (See, e.g., *In re Qawi* (2004) 32 Cal.4th 1, 22 [initial medication

9

period, which "may be certified for additional involuntary medication up to 21 days," a right to "contest [the] certification" "with the assistance of an attorney or advocate," at a "certification review hearing [ ] conducted by the court-appointed hearing officer," and a 24-day limit on the involuntary medication "without an order from the superior court."]; *People v. Thomas* (1990) 217 Cal.App.3d 1034, 1037 ["By court order the period of involuntary medication can extend for an additional period of one year."].)  Sections 2602 and 2603, like section 1370, require inmates be appointed representation and notified of the right to seek judicial review of the temporary involuntary medication orders.  (See § 2602, subds. (c)(7)(C), (d)(3) [duty to notify inmate of right to contest findings of ALJ authorizing involuntary medication via a petition for administrative mandamus or file a writ of habeas corpus]; § 2603, subds. (c)(8)(B)(iii), (d)(5) [duty to inform inmate of right to appeal or file writ of habeas corpus as to "any decision . . . to continue treatment with involuntary medication" after order authorizing involuntary medication].)  While sections 2602 and 2603 identify specific forms of judicial review—i.e., a petition for administrative mandamus, a writ of habeas corpus, an appeal— the more generalized "judicial review" language in section 1370 presumably encompasses all such options depending on the circumstances from which a defendant seeks such review.

We further conclude the subsequent superior court medication hearing cannot constitute adequate judicial review because courts have uniformly concluded IST defendants have a right to appeal from involuntary medication orders.  (*People v. Christiana* (2010) 190 Cal.App.4th 1040, 1046 [order "authorizing involuntary administration of antipsychotic drugs under section 1370 [is] an order made after judgment in a special proceeding" and thus appealable]; see also, e.g., *People v. Coleman* (2012) 208 Cal.App.4th 627, 633

10

[reviewing order authorizing involuntary treatment under section 1370]; *People v. Lameed* (2016) 247 Cal.App.4th 381, 397 [same].) While these cases considered the issue in connection with one-year involuntary medication orders, we see no basis for distinguishing the appealability of a temporary involuntary medication order. As explained in *Christiana*, "section 1237 authorizes a defendant to take an appeal '[f]rom any order made after judgment, affecting the substantial rights of the party.' "[4] (*Christiana*, at p. 1046.) A temporary medication order, as with one-year orders, implicates significant liberty interests. Specifically, the United States Supreme Court has held that "an individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.' " (*Sell v. United States*, *supra*, 539 U.S. at p. 178.) This interest also is protected under California's right to privacy, which "clearly extends to the right to refuse antipsychotic drugs." (*In re Qawi*, *supra*, 32 Cal.4th at p. 14.) Considering these significant interests, IST defendants subjected to involuntary medication—even over a relatively short 18 day period—must be able to seek judicial review of their involuntary medication orders.

Finally, we reject the Attorney General's argument that temporary restraining orders and/or preliminary injunctions could provide adequate relief from temporary involuntary medication orders. The Attorney General makes this argument without citation to any authority to suggest such procedures have been used or are appropriate in these situations. And the Attorney General does not explain how a defendant, who has been deemed incompetent to stand trial and thus has no pending litigation, could

---

[4] We recognize *Christiana* involved the right to appeal. However, due to the short timeframe of temporary involuntary medication orders, an appeal likely would not provide a sufficiently speedy remedy at law and, instead, writ relief would be appropriate.

11

reasonably be expected to initiate litigation to pursue such relief in a sufficiently timely manner.

In light of the compelling liberty interest against involuntary medication, and the failure to identify any alternative form of relief reasonably available to D.K., the superior court erred in concluding writ relief was categorically unavailable. However, because the superior court subsequently decided D.K.'s petition on its merits, she did not suffer any prejudicial harm from the court's error. And because D.K.'s challenge to the sufficiency of evidence supporting the medication order is moot (see Part I, *ante*), we need not remand the matter for further proceedings.

## DISPOSITION

The superior court's holding that defendant was not entitled to writ review is reversed. Because we dismiss as moot defendant's challenge to the court's finding that substantial evidence supported the involuntary medication order, we need not remand.

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Rodríguez, J.

A167272/*D.K. v. Office of Administrative Hearings*

Trial Court:        Napa County Superior Court

Trial Judge:        Hon. Cynthia P. Smith

Counsel:            Paul R. Kraus Attorney at Law, Paul Kraus, for Petitioner
                    and Appellant.

                    Rob Bonta, Attorney General, Cheryl L. Feiner, Senior
                    Assistant Attorney General, Gregory D. Brown,
                    Supervising Deputy Attorney General, and Samona L.
                    Taylor, Deputy Attorney General, for Respondent.